IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

JUNE TERM, 1881.

---

### JACOB R. JOHNSON *v.* JOHN RAMSEY.

1. An accommodation endorser cannot set up, in a suit against him by his endorsee, that there was an agreement between them at the time of putting their names on the paper that such endorsement should constitute a joint, and not a successive, liability.
2. The case of Johnson *v.* Martinus is to be considered as overruled.

On case certified, &c.

The plaintiff and defendant were endorsers on a note, of which the following is a copy, viz.:

$300.         FLEMINGTON, N. J., February 14th, 1878.
Three months after date we, or either of us, promise to pay to the order of Jacob R. Johnson, three hundred dollars, at the Flemington National Bank, value received, without defalcation or discount.

[Signed,]          JACOB M. JOHNSON.
                        C. K. KLINE.
[Endorsed,]          JAS. W. JOHNSON.
   J. R. JOHNSON.
   JOHN RAMSEY.

(279)

The note was discounted for the benefit of the drawers, and not being paid at maturity the bank sued the makers and endorsers upon it, and obtained judgment by default against them. Only part of the money so adjudged could be raised out of the property of the drawers of the note, and the endorser Johnson was obliged to pay the residue. Upon a claim being made by him that he and Ramsey were joint accommodation endorsers, a feigned issue was ordered to try that question, and upon that trial the said Jacob R. Johnson introduced evidence to show that he "endorsed the said promissory note at the request of the said John Ramsey, and under the agreement and promise of the said John Ramsey to pay one-half of any moneys they, the said Jacob R. Johnson and John Ramsey, or either of them, should be afterwards compelled to pay by endorsing said note for the said makers; that Johnson refused to sign the note as first endorser and payee until Mr. Ramsey promised to pay one-half of any moneys which might be recovered from both or either of them." It further appeared that this note was given to take up a similar note held by the bank, made by the same parties to the order of Jacob R. Johnson, and endorsed by him and Ramsey for the accommodation of the makers, but without any agreement as to the respective liabilities between the endorsers.

The question presented for the advisory opinion of this court was, whether the testimony relative to the alleged agreement above set forth was admissible.

Argued at February Term, 1881, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *R. S. Kuhl.*

For the defendant, *J. N. Voorhees.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. This case presents for consideration, in one of its aspects, the question how far the

Johnson v. Ramsey.

written contract inherent in the endorsement of commercial paper, as between accommodation endorsers, can be controlled or affected by a cotemporaneous oral agreement. The plaintiff in the present suit is the first endorser on this note, and has paid part of the sum mentioned in it, and he now seeks to compel the defendant, who is the next endorser below him, to contribute one-half of this outlay, on the ground that at the time they signed the paper such was the understanding between them. As they stand upon the note these are successive endorsements, and unexplained, and considered intrinsically, they import a primary liability in the plaintiff; and, with respect to him, an entire irresponsibility on the part of the defendant. This is the legal effect of the signatures as they appear on the back of the note; the inquiry is, whether another force can be given to them by virtue of an agreement between these parties, entered into at the time of making such endorsements.

In defining the legal rule on this general subject, Mr. Byles, in his treatise on Bills, page 90, correctly says that "no mere oral agreement can have any effect at law in contradicting the instrument, if cotemporaneous with the making of it." This is the ordinary principle applicable to every species of written contracts; and although, in the main, it throws its protection around the agreement embodied in commercial paper, still it cannot be denied that in this latter case it has sometimes been thought to be subject to certain unusual limitations. That such supposed limitations have the sanction of high judicial authority I think is manifest, though these exceptions to the general rule are not so numerous as is sometimes supposed. I have not perceived that in any English case a different rule in this respect has been applied to commercial paper from that which protects the inviolability of other species of written undertakings. And such, too, is the general bent of the authorities in this country. Nevertheless, no one can look into the American decisions and text-books without being painfully impressed with the idea that very great confusion in the use of principles prevails with regard to this topic; but

upon careful examination it will be found that this state of things is for the most part owing to mistake in the application of the law to particular facts, and not to any denial of the cardinal doctrine that these written commercial contracts, like other proofs of the same nature, are not liable to modification by inconsistent, cotemporaneous, oral understandings. Occasionally a case can be met with in which it may be thought, and upon very satisfactory grounds, that the written contract has been altered by the extraneous evidence, but upon careful scrutiny it will be ascertained that such evidence has been sanctioned for the reason that in the judgment of the court it is not out of harmony with the agreement, as contained in the instrument. So, sometimes, cases in which a want of consideration has been permitted to be shown have been regarded as exhibitions of instances of a departure from the rule in question, but it is plain that they do not evidence such a deviation, as the proof of such a defect is always, under ordinary circumstances, admissible, in order to invalidate a simple contract, though reduced to writing. In the same manner fraud and illegality are legitimate defences to suits on all other instruments, as well as, under certain conditions, to those founded on bills or notes. And when the commercial contract intended to be committed to writing has been only partly expressed, then, as in other similar cases, the residue may be proved by extrinsic evidence. This last rule is pointedly exemplified in that class of cases in which a note has been endorsed in blank by a third party, before the payee has put his name upon it. In the courts of this state such an endorsement is held to carry with it so incomplete and uncertain a meaning as to be, on the principle just referred to, open to the explanation of oral evidence. This has been ruled and finally decided in the cases of *Crozer* v. *Moore, Spenc.* 256, *Watkins* v. *Kirkpatrick*, 2 *Dutcher* 84, and *Chaddock* v. *Vanness*, 6 *Vroom* 517, and in all these cases the fundamental rule that a written contract, having a complete import, must speak exclusively for itself, was fully admitted. And even in those states in which, under the same conditions, a different

Johnson v. Ramsey.

result has been reached—and such has been the case in the State of New York and elsewhere—such result has rested on the consideration that this particular kind of endorsement expresses, in its own terms, as affected by legal rules, a contract complete and intelligible, and on that account is not variable by the force of foreign testimony. It will be observed that neither of these lines of decisions is invasive of the rule under consideration. And it may be further remarked that in no jurisdiction has the rule that oral evidence is inadmissible thus to qualify a written contract, perfect with respect to its signification, been more uniformly and stringently enforced than within this state. The truth of this statement will conclusively appear by a reference to the cases collected in *Stewart's Dig.*, *p.* 502, *pl.* 439.

This being the established general rule, the question arises, how is this present offer of parol evidence to be legitimated?

These parties, as has been stated, are accommodation endorsers, and the name of the one stands before the other on the back of this note. The first inquiry, therefore, is as to the legal effect of that collocation; does it form, by settled rules of law, an entire and definite understanding between these litigants? If it does, to make the oral agreement admissible, which is here sought to be superinduced, it must rest on some exceptional ground, as such proof would be plainly excluded by the operation of the general principle above expressed.

In the case of *Johnson* v. *Martinus*, 4 *Halst.* 144, this precise question was before this court for consideration, and it was then explicitly held that an endorsement in blank does not constitute a complete written contract, and that, therefore, the understanding that subsisted between endorser and endorsee could be shown *aliunde* in a suit between them. But in the opinion read in the Court of Errors in the before-cited case of Chaddock *v.* Vanness, this decision was emphatically disapproved, and as such criticism was not dissented from by any member of the court, so far as I know, it is not to be regarded as an absolute authority. Intrinsically considered, it is difficult to see how it can sustain itself. It is founded on the

broad doctrine that the usual blank endorsement on a note is inconclusive with respect to the terms of the contract between endorser and endorsee, and that that contract is subject to all the uncertainties that attend the admissibility of oral testimony. In the case reported by Halsted, the endorser signing the note in blank was allowed to stand, by force of extraneous evidence, in the same position as though he had signed it "without recourse." Such a doctrine is not consistent either with public policy nor with the great current of authority both at home and abroad. Under its prevalence, these commercial contracts which are so common, and which, in view of the convenience of trade, should be so fixed and definite in their terms, would be the loosest contracts in use by men of business. It is not easy to believe that engagements which have been for such a length of time in every-day use, and which embrace interests of such magnitude, have been generally understood to be in such a state of instability. By the act of endorsement the endorser enters into an independent contract with the endorsee, and the law, *proprio vigore*, fixes with absolute certainty the terms of such contract, the promise of the endorser being that the antecedent names upon the paper are genuine; that the paper is due and payable according to its tenor; that the maker or previous endorsers will pay it at maturity, if duly called upon and notified, or, if they do not, upon due diligence being used, he himself will pay the same. According to the theory adopted in Johnson *v.* Martinus, all these terms are but implications of law which may be controverted and superseded by proof of an oral agreement of a different effect; that is, that the endorser, in a suit against him by his immediate endorsee, may show by witnesses that when he made such endorsement the understanding was that he did not guarantee the genuineness of the antecedent signatures, or some of them; that he did not promise that the note, on due presentment and notice, would be paid according to its tenor, or that he himself was to be exempted from all responsibility. It is, I think, very plain that such a doctrine as this, if it should prevail, would very materially impair the

efficiency and value of commercial paper as an instrument of commerce. It would be virtually saying that an endorsee could not rely, with any reasonable confidence, on the security of his immediate endorser, unless all the various stipulations, inherent in the act of endorsement, should be entered in writing *in extenso*, above his name; and yet the probability is that such an entry has never yet appeared on the back of commercial paper. The very great inconvenience and uncertainty attendant on such a doctrine will be more fully appreciated by bearing in mind that it would attach to bills of exchange as well as to notes, so that such instruments, instead of bearing on their face the indubitable evidence of ther own meaning, in effect would be subject in some degree, and to an unknown extent, to mutilation by the testimony of witnesses. It seems to me that it is not to be wondered at that the principle on which the case cited from Halstead's reports was decided, has been deprecated by a leading text-writer, and, as I understand, has been repudiated by our own Court of Errors, in the decision already referred to. 2 *Pars. B. & N.* 24.

My conclusion on this point, therefore, is that it is a general rule of law that a blank endorsement, as between an endorser and his immediate endorsee, creates a definite contract in writing, as to such parties, which cannot be modified by a cotemporaneous oral agreement. This result would seem, upon principle, decisive of the question arising in the present case, yet, nevertheless, there is another subject which cannot be properly passed in silence, for there are decisions which cannot fail to command much respect, which hold that as between an accommodation endorser and endorsee, the form of the note is not conclusive, and that in that connection parol evidence is admissible. The first of the cases here alluded to is that of *Phillips* v. *Preston*, 5 *How.* 278, and it is not to be denied that it is exactly to the purpose, for it explicitly declares that an agreement between first and second endorsers, for the accommodation of the maker, to share the loss equally, made at the time of endorsing the note, may be proved by parol.

In that case, as in the present one, the first endorser had paid the note, and the suit was by him against the endorsee for contribution, on the ground that such was the oral understanding. I have examined this case with care, and although yielding to it all the deference that of right belongs to so high an authority, have altogether failed to be able to concur in the principles and reasoning on which its conclusion rests. The theory by which the result reached is attempted to be justified is this: That the suit is not upon the contract arising by law out of the act of endorsing, but on what is called the collateral oral arrangement. The rule is plainly admitted that written evidence cannot be altered by parol. To show in what distinct terms this admission is made, and also the rule of decision, the following quotation will suffice. Alluding to the extrinsic testimony, the opinion says: "Were the action on the notes, and this evidence offered to contradict them, it would be entirely different, because in an action on a note, parol testimony is not competent to vary its written terms, and, probably, not to vary a blank endorsement by the payee from what the law imports. * * * So between contending parties, likewise, all prior conversation is supposed, as far as binding, to be embodied in the written contract. * * * But the parol evidence here is not offered in any action on the note, or to alter its terms or its endorsements; nor is any prior or cotemporaneous conversation offered to vary the note or its endorsement, in an action founded on either of them. But it is offered to prove a separate contract, which was made by parol, and is of as high a character as the law requires, and this evidence is plenary and entirely satisfactory to substantiate the separate contract." It will be observed that this reasoning admits the fact the endorsement constituted a definite contract, in writing, between the parties to the litigation, and that if the action was on that written contract the parol evidence would have been inadmissible, and it then asserts that there is what the opinion calls a collateral contract, upon which the suit was based. Now, what seems to me impossible to concede, is that on the facts stated there existed two legal contracts—an oral

one and a written one. How can this be so, when the one is contradictory of the other? The written contract bound the first endorser, with reference to the rights of the endorsee, to pay the whole note; the oral contract bound him to pay only half. Such stipulations relate to the same subject matter, and they cannot stand together, and the consequence is it must be conclusively presumed that the parties did not intend to establish such inconsistencies. Such a juncture presents nothing but the ordinary case of a conflict between the oral and the written evidence; in that case the former requiring the first endorsee to pay the entire claim, and the latter binding him only to bear a moiety of it. It seems to me that it would despoil the rule, which is prohibitive of parol evidence in such matters, of much of its practical benefit, if the oral engagement, variant from the written one, can lay a separate ground of action. Such a principle would enable a person, at his option, to sue on the written contract or on a contemporaneous oral contract. The hypothesis on which the rule which excludes on such occasions cotemporaneous oral stipulations, is the peremptory assumption that the parties at the given time, with respect to the same subject matter, entered into but a single agreement. The reported case assumes that the first endorsee, in the same transaction and at the same time, agreed to pay the whole, and, at the same time, stipulated that he should pay only one-half of the money in question. In my opinion, upon principles thoroughly established, under the circumstances stated, the written endorsement constituted the only legal evidence that could be resorted to.

The other cases in which the doctrine which I have here sought to controvert has been maintained, are those of *Weston* v. *Chamberlain*, 7 *Cush.* 404, and *Clapp* v. *Rice*, 13 *Gray* 403; but it is not necessary to notice them further than to say that in neither of them does the subject appear to have been independently considered; the point in question being disposed of in a few words, and the only pertinent authority cited being that of Phillips *v.* Preston, which is above discussed.

In the case now before the court, as I read the undertaking

of the plaintiff, by force of his prior endo·sement, he agreed, in writing, to pay the whole of this money, so far as the defendant is concerned, and he cannot alter that agreement by the oral testimony in question.

In closing it may not be amiss to remark that this case does not present the point above discussed as it is usually presented between two accommodation endorsers. There is another element in this affair, which is the fact that this plaintiff had admittedly become liable to the defendant for this money as endorser on the former note, to take up which the note now in suit was given. As a consideration for his endorsement on the note now in question, he is released by the defendant from his liability on the former one. Inasmuch as this endorsee has taken this endorsement for value, the result is that if an oral engagement, differing from the legal import of the endorsement, may be set up here, so it can in all cases in the ordinary course of business.